FILED

2008 Dec-30  AM 10:30
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | | |
|---|---|---|
| **SOUTHLAND HEALTH SERVICES, INC., a Florida Corporation, by and for itself and all associated subsidiaries herein named, PALADIN HOLDINGS, INC., a Florida Corporation, and LARRY N. LUNAN, Individually,** | ) ) ) ) ) ) ) ) ) | |
| | ) | **CASE NUMBER:** |
| **Plaintiffs,** | ) ) ) | _____ |
| **v.** | ) ) | |
| **BANK OF VERNON, an Alabama Corporation, WEST ALABAMA BANK AND TRUST, an Alabama Corporation, CITIZENS STATE BANK, an Alabama Corporation, CLANTON DUBOSE, an individual, DUDLEY BELL, an individual, SUZAN R. BELL, T. ALAN WALLS, an Walls, an individual, and GARY BRADFORD, an individual,** | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| **Defendants.** | | |

_____

# COMPLAINT
_____

**COME NOW PLAINTIFFS**, Southland Health Services, Inc., Paladin Holdings, Inc., and Larry N. Lunan (hereinafter "Plaintiffs"), by and through their attorneys of record, and state as follows:

## PARTIES

1.      Plaintiff, Southland Health Services, Inc., (hereinafter "Southland"), a for profit Florida corporation, with its principal place of business at 3520 Orebank Road, Kingsport, Tennessee, 37664, that is wholly owned by Paladin Holdings.  Southland is the sole owner of multiple operating subsidiary entities, including Southland of Virginia, Inc. (formerly known as Southland Health Services LLC), Southland Health Services of Georgia, Inc., Southland Health Services of Alabama, Inc., MedExpress of Mississippi, L.L.C., Extended EMS, Inc., TWC, Inc., and other subsidiaries.

2.      Paladin Holdings, Inc., (hereinafter "Paladin") is a publicly held corporation, a Florida Corporation, with its principal place of business at 3520 Orebank Road, Kingsport, Tennessee, 37664

3.      Plaintiff, Larry N. Lunan, is a resident of Kingsport, Sullivan County, Tennessee, and is over the age of nineteen (19) years at all times pertinent herein.  At all times, Larry N. Lunan, was the majority shareholder and personally guaranteed Southland Health Services, Inc.'s, debt.

4.      Defendant, Bank of Vernon, (hereinafter "BOV") is an Alabama banking corporation, doing business in Vernon, Alabama, with it principal place of business at 44825 Highway 17 Vernon, Alabama, 35592. At all times herein mentioned, Defendant BOV was and now is a domestic corporation, organized and existing under the Banking Laws of Alabama, and engaged in business as a bank and duly authorized to do so.

5.      Defendant, West Alabama Bank and Trust, (hereinafter "WABT") is an Alabama banking corporation, doing business in Pickens, Perry, Choctaw, Fayette, Lamar, Tuscaloosa, Sumter and Bibb counties, Alabama, with its principal place of business at 509 1st Street South, Reform, Alabama, 35481. At all times herein mentioned, Defendant WABT was and now is a domestic corporation, organized and existing under the Banking Laws of Alabama, and engaged in business as a bank and duly authorized to do so.

6.      Defendant, Citizens State Bank, (hereinafter "CSB") is an Alabama banking corporation, doing business in Lamar County, Alabama, with its principal place of business at 209 West Columbus Avenue, Vernon, Alabama 35592. At all times herein mentioned, Defendant CSB was and now is a domestic corporation, organized and existing under the Banking Laws of Alabama, and engaged in business as a bank and

duly authorized to do so.

7.      The operating subsidiaries wholly owned by Southland have each assigned for value any and all claims against the named defendants in this Complaint that arise out of facts set forth in this Complaint.

8.      Defendant Clanton Dubose, is a resident of Vernon, Lamar County, Alabama, and is over the age of nineteen (19) years.

9.      Defendant William Dudley Bell, Jr., is a resident of Fayette, Fayette County, Alabama, and is over the age of nineteen (19) years.

10.     Defendant Suzan R. Bell, is a resident of Fayette, Fayette County, Alabama, and is over the age of nineteen (19) years.

11.     Defendant T. Alan Walls, is a resident of Lawrenceville, Georgia, and is over the age of nineteen (19) years.

12.     Defendant Gary Bradford, is a resident of Vernon, Lamar County, Alabama, and is over the age of nineteen (19) years.

## JURISDICTION AND VENUE

13.     Jurisdiction exists under the provisions of 28 U.S.C. § 1332 (a), *et seq.*, which grants this court jurisdiction in civil actions on the basis of diversity of citizenship where the matter in controversy, exclusive of interest and costs, exceeds seventy-five thousand dollars ($75,000.00). This Court also has jurisdiction pursuant to 18 U.S.C.A. § 1964(c). Further, under 18 U.S.C.A. § 1391(b), venue is proper in any district in which a substantial part of the acts, events, or omissions occurred that gave rise to the claim for relief. The named Defendants are or were residents or resident corporations residing within this district at the time of the events forming the basis of this complaint. Venue is also proper under Title 18 U.S.C.A. § 1965(a), which provides that venue for civil actions arising under the Racketeer Influenced and Corrupt Organizations statute [RICO] may be instituted in the district court of the United States for any district in which such person resides, is found, has an agent, or transacts his affairs.

## FACTUAL ALLEGATIONS

14.     On February 4, 2005, effective date December 1, 2004, the Plaintiff Paladin Holdings, Inc. purchased the stock of Southland. Southland, through its subsidiaries, is engaged in the business of providing ambulance and emergency medical services to underserved areas in Alabama, as well as in other states, including Mississippi, Georgia, Virginia, Tennessee, Kansas, Louisiana, and Florida.

15.      In 2005, Plaintiff Southland's operations spanned seven states and employed over 800 people.

16.     Southland or its wholly owned subsidiaries established corporate checking accounts, with Defendant Bank of Vernon, Defendant Citizens State Bank, and Defendant Bank Plus and from time to time deposited various sums of money with the Defendants, under the customary rules and regulations applicable to banking institutions, and subject to the agreement between Plaintiff and the Defendants.

17.     Over the course of three years, individual Defendants engaged in a pattern and practice of intentionally devaluing the Plaintiffs, in an effort to cause their financial failure.  This devaluation occurred through the systematic theft of negotiable instruments, unauthorized wire transfers to pay personal expenses, unauthorized wage increases for rank-and-file employees, unauthorized personal use of company gasoline credit cards, and taking of other corporate monies and assets from the corporations.  It was hoped by the individual Defendants that the financial failure of Plaintiffs would be blamed on seemingly legitimate cost overruns and that their theft of corporate funds would go undiscovered.

18.     During the period of 2005 – 2008, the collective actions of the named defendants have caused the Plaintiffs lose approximately $45 million in annual revenues, as well as to suffer the complete loss of a business valued from $75 million to $100 million in the publicly traded securities market.

Unauthorized Salary Raises

19.     One of the primary means that Defendants Bell and Dubose and others utilized to weaken Plaintiffs and simultaneously provide a possible cover for their theft was by instituting unauthorized wage increases.  This salary increase ultimately cost Plaintiffs approximately four million dollars ($4,000,000.00) per year.   No corporate resolution allowing this action was ever passed by the shareholders or directors of any of the Plaintiff corporations.

20.     Larry Lunan issued a specific directive on or about February 1, 2005, that no raises were to be given to any of the rank-and-file employees regardless of reason.  However, Defendant Gary Bradford authorized raises for employees despite Mr. Lunan's directive.  These raises were effected by Defendant Dudley Bell and his accounting staff.

21.     At the time the unauthorized raises were discovered, Mr. Bradford was asked why he disobeyed Mr. Lunan's direct order.  It was explained that the raises were given to correct some discrepancies between what paramedics and drives made in various counties.  Mr. Bradford was demoted and relieved of parts of his duties.  However, at the time Defendant Bradford was demoted, the full extent of the unauthorized raises was not known.   Had it been known at that time, Defendant Bradford would have been immediately terminated.  He was employed by the Plaintiffs until August, 2008, at which point Bradford went to work for a competitor of Plaintiffs, in direct violation of his non-compete agreement.

Unauthorized Use of Company Gas Cards

22.    Another primary method that Defendants Bell and Dubose and others utilized to weaken Plaintiffs, and simultaneously provide a possible cover for their theft was by allowing and encouraging employees to use company issued gas cards for personal use.

23.    Defendants Bell and Dubose both used corporate gas cards to purchase gasoline for their personal use. This was not discovered until 2007 when Defendant Bell inadvertently told Mr. Lunan that he planned to use his corporate gas card to pay for gas on a trip. In this instance, Defendant Bell's father had fallen ill, and Mr. Lunan offered to provide him with gas money for his trip home. Defendant Bell responded that he didn't need gas money since he had a corporate gas card.

24.    Some time after Defendant Bell's admission, Mr. Lunan began investigating the employee use of corporate cards for personal use. It was discovered that most employees were misusing their cards—sometime filling up two or more personal vehicles at a time. A list detailing the gas card misuse is attached hereto as "Exhibit A."

25.    Plaintiffs discovered this fraud in November 2007, and immediately instituted a "diesel only" policy with respect to the card, as the ambulances ran exclusively on diesel.

Payments to or on the Behalf of Former Owners

26.    Defendants Bell and Dubose continued to pay obligations of the former owners against the express instructions of Plaintiff Lunan and the Board of Directors of Plaintiff Paladin, and conspired to conceal these improper payments from Plaintiffs.

27.    These payments were made without the knowledge of Plaintiffs, and in direct contravention to Plaintiffs' directions.

Theft of Negotiable Instruments – Dubose

        A.    Bank of Vernon

28.    Defendant Dubose, over a period of 2 months, converted approximately 60 checks payable to Plaintiffs or their subsidiaries, totaling $170,000.00, via their theft from the Emergystat of Sulligent, Inc.'s ("Sulligent") Vernon, Alabama, office, where Dubose performed services on behalf of Southland, Sulligent, and other Southland subsidiaries.

29.    These checks were all made payable to Southland Health Services, Inc., or affiliated subsidiaries, and were either deposited into Defendant Dubose's personal account at Defendant BOV, or were tendered for cash and honored by Defendant BOV.

30.    A list of these converted instruments known to Plaintiffs at the time of filing of this complaint is attached hereto as Exhibit "B".

31.     At the time of the theft and conversion of the instruments payable to Plaintiff, Defendant Dubose maintained at least one personal checking account with Defendant BOV.  Furthermore, Dubose was personally known to the officers and employees of BOV.  He is a native of Vernon, Alabama and/or Lamar County, Alabama.  Further, the fact that Defendant Dubose was an employee of Plaintiff Southland was known to the officers and employees of BOV.

32.     Defendant Dubose annual net salary during the course of these thefts was approximately $95,316.00.

33.     Defendant Dubose periodically deposited his salary checks into his personal account at BOV.  BOV also extended loans to Defendant Dubose during the period of 2005 to 2008.  Dubose's annual income should have been verified as part of the loan application process.     Accordingly, WABT knew or should have known Defendant Dubose's annual salary was approximately 95,000.00.

34.     Defendant BOV allowed Defendant Dubose to cash or deposit the checks of Southland or its affiliates totaling at least $180,275.66 into his personal account. Defendant BOV knew or should have known Defendant Dubose's annual salary was less than half of the total of the checks presented.

35.     Upon information and belief, the Defendant BOV was aware of or should have been aware, or were party to the embezzlement scheme and enterprise by Dubose, Bell and others.  In fact, Larry Lunan was advised by a BOV employee in late 2008 that the employees and management of BOV were aware of the irregular and fraudulent activities of Defendant Bell.  This employee stated that these irregularities had been reported to Mr. Larry Huggins, who is a director and President of BOV.  Accordingly, BOV knew that employees of Plaintiffs or their affiliate subsidiaries were engaging in irregular and fraudulent activities.  However, neither Mr. Lunan nor any employee of Southland or its affiliates was informed of these activities.

36.     BOV's failure to inform Mr. Lunan of Mr. Dubose's irregular and fraudulent banking activities is especially egregious in the light of the fact that it required Mr. Lunan to pledged his personal assets for Southland debt obligations it held.

37.     Defendant BOV was aware that Defendant Dubose's depositing, cashing or otherwise converting Southland corporate funds, and failing to inform Southland of such conversion, was in direct contravention of the bank's policy and procedures and state and federal banking laws.  Defendant BOV was also aware that the conversion of funds denied Southland the use of its own funds needed for the continued operation of the company.

Unauthorized Drafts and Transfers – Dubose

38.     Defendant Dubose caused Southland corporate funds to be diverted via ACH wire

transfers directly from Southland's corporate bank account at CSB to make payments toward Dubose's personal debt obligations for mortgages on real property held by CSB.

39.    It is believed that one of the debt obligations paid by Dubose via ACH transfer was the mortgage on the property he owned at 1626 County Road 9, Vernon, Alabama.

40.    Neither Plaintiff Southland nor any affiliated entity was a signatory or a guarantor on Defendant Dubose's notes held by CSB or any other financial institution.

41.    Despite the fact that Southland had no connection whatsoever to Defendant Dubose's personal debt obligations, CSB allowed fraudulent ACH charges and wire transfers to be made from the Southland corporate account without due written or verbal authorization by a Southland corporate director or its President, Mr. Lunan.

42.    The total amount of wire transfers made by Defendant Dubose is unknown at this time.  However, at present, the fraudulent transfers made by Dubose and Bell currently total $733,816.33 and were made via 39 distinct and separate transfers.  A list of these transfers is attached here as "Exhibit C."

Theft of Negotiable Instruments – Bell

      A.    West Alabama Bank & Trust

43.    Defendant Bell, with the assistance of WABT, was able to convert approximately $360,887.42 of Plaintiff Southland's funds to his personal account at WABT.  This was accomplished in a very simple manner.  Defendant Bell took the checks of Southland and its affiliates from the Vernon, Alabama office where Bell worked and deposited them into to his personal account at WABT.

44.  WABT accepted the $360,887.42 of Southland non-payroll checks for deposit to Defendant Bell's personal account, of which $82,000 were made payable directly to Defendant West Alabama Bank and Trust.  A list of these stolen instruments is attached hereto as Exhibit "D".

45.    Plaintiffs believe that Defendant Bell maintained a personal account with Defendant WABT from 2005 to 2008.

46.    Defendant Bell periodically deposited his salary checks into his personal account at WABT.  WABT also extended loans to Defendant Bell during the period of 2005 to 2008.  Accordingly, WABT knew or should have known Defendant Bell's annual salary was $70,000.00.

47.    Upon information and belief, the Defendant WABT was aware of or should have been aware, or was party to the embezzlement scheme and enterprise by Dubose and Bell.

48.     Defendant WABT was aware or should have been aware that Defendant Dubose's depositing, cashing or otherwise converting Southland corporate funds, and failing to inform Southland of such conversion, was in direct contravention of the bank's policy and procedures and state and federal banking laws.  Defendant WABT was also aware that the conversion of funds denied Southland the use of its own funds needed for the continued operation of the company.

Unauthorized Use of Corporate Credit Cards – Bell

49.     Defendant Bell embezzled approximately $250,000 using the Company's BOV credit card.  Defendant Bell's use of the credit card was extensive and frequent over a 24 month period from March 2006 through March 2008.

Unauthorized Wire Transfers - Bell

50.     Defendant Dubose caused Southland corporate funds to be diverted via ACH or wire transfers directly from Southland's corporate bank account at CSB and BOV to make car payments, personal VISA payments, and other personal debt obligations and/or mortgages on real property. Defendant Bell embezzled approximately $40,000.00 via this scheme from the Plaintiffs' accounts.

## COUNT I
## BREACH OF FIDUCIARY DUTY BY INDIVIDUAL DEFENDANTS

51.     Plaintiffs reallege and incorporate by reference all preceding paragraphs and counts as though fully set forth herein.

52.     Under section 10-2B-8.42 of the *Code of Alabama* 1975, as amended, Defendant Clanton Dubose had a duty as an officer of the Plaintiffs, including Southland and Paladin, (Chief Operating Officer) to act in good faith with the care an ordinarily prudent person in a like position would exercise under similar circumstances and in a manner that he reasonably believes to be in the best interest of the companies.

53.     Under section 10-2B-8.42 of the *Code of Alabama* 1975, as amended, Defendant T. Alan Walls had a duty as an officer of the Plaintiff, including Southland and Paladin, (Chief Financial Officer) to act in good faith with the care an ordinarily prudent person in a like position would exercise under similar circumstances and in a manner that he reasonably believes to be in the best interest of the companies.

54.     Under section 10-2B-8.42 of the *Code of Alabama* 1975, as amended, Defendant Gary Bradford had a duty as an officer of Southland and Paladin, (Assistant Chief Operating Officer) to act in good faith with the care an ordinarily prudent person in a like position would exercise under similar circumstances and in a manner that he reasonably believes to be in the best interest of the companies.

55.     Defendants Dubose, Walls, and Bradford, who were officers Plaintiffs, with the assistance of Defendant Bell, breached their duty of loyalty to the Plaintiff corporations by engaging in self-dealing and usurping corporate opportunities.  These Defendants, while officers of Plaintiffs, conspired to establish a company competitive with the Plaintiffs.  This competitive enterprise was in fact established in Vernon, Alabama, after the Plaintiff corporations were forced to cease doing business in Alabama and Mississippi, as a direct result of the conduct of the aforementioned Defendants.

56.     This competitive enterprise was financed with funds illegally taken from the Plaintiffs, as discussed in more detail in Counts II, III, and IV.  Specifically, the funds for ambulances, emergency equipment, insurance and bonds, the real estate utilized by the enterprise, and operating expenses were all monies illegally taken from Plaintiffs.  A direct result of these Defendants' pilfering of corporate funds was the cessation of Plaintiffs' operations in Alabama, Mississippi, and other states. This theft and the conduct engaged to effect it constituted a breach of the duties of care and loyalty by Defendants Dubose, Walls, and Bradford.

57.     In addition to direct theft of corporate funds, Defendants Dubose, Walls, and Bradford, with the assistance of Defendant Bell, orchestrated staggering increases in all of the Plaintiffs' companies costs in an effort to cause all of the Plaintiff companies to fail.  The primary means of increasing company costs were effecting unauthorized company-wide raises for all rank-and-file employees and the encouragement of employee use of company gas cards for personal use.  The unauthorized pay raises cost Plaintiffs companies approximately $4 million per year.   The unauthorized personal use of company gas credit cards cost approximately $750,000.00. This wasting of corporate assets with an eye to destroy all of the Plaintiff companies constituted a breach of Defendant Dubose's, Walls', and Bradford's duties of care and loyalty to said corporations.

        **WHEREFORE PREMISES CONSIDERED,** Plaintiffs seek an accounting and disgorgement of the monies obtained by Defendants as a result of their breaches of fiduciary duty, rescission of any transfers of land or assets, and any other relief, including money damages and any other equitable relief as the court may deem appropriate, plus attorneys fees, interest, and costs.

## COUNT II
## DEFENDANT BANKS' LIABILITY FOR CONVERTED INSTRUMENTS PAYABLE TO SOUTHLAND AND AFFILIATED ENTITIES UNDER SECTION 7-3-420 OF THE CODE OF ALABAMA

58.     Plaintiffs reallege and incorporate by reference all preceding paragraphs and counts as though fully set forth herein.

59.     Defendant Dubose stole checks payable to Southland or an affiliated subsidiary, indorsed these checks, and deposited said checks into his personal account as detailed by the following:

a.      On September 4, 2007, for value received, Wilkinson County, Alabama, executed and delivered a subsidy check payable to Med Express, LLC, as the payee, in the amount of $3,000.00. On September 7, 2007, before Med Express, LLC was able to endorse or deposit the check to its account, the check was taken by Clanton Dubose. Thereafter, on or about September 7, 2007, a person or persons, believed to be Dubose indorsed Med Express, LLC signature to the check and received payment for it in the amount of $3,000.00 from Defendant BOV, the drawee of the check, or Defendant Dubose deposited the instrument into his personal checking account located at Defendant BOV.

b.      On December 6, 2007, for value received, various unidentified checks were executed and delivered payable to Plaintiffs, as the payee, in the amount of $16,215.74. On December 6, 2007, before Plaintiffs were able to endorse or deposit the check to its account, the check was taken by Clanton Dubose. Thereafter, on or about December 6, 2007, a person or persons, believed to be Dubose indorsed Plaintiffs' signature to the check and received payment for it in the amount of $16,215.74 from Defendant BOV, the drawee of the check, or Defendant Dubose deposited the instrument into his personal checking account located at Defendant BOV.

c.      On December 13, 2007, for value received, Jefferson County, Alabama, executed and delivered a subsidy check payable to Plaintiffs, as the payee, in the amount of $13,500.00. On December 13, 2007, before Plaintiffs were able to endorse or deposit the check to its account, the check was taken by Clanton Dubose. Thereafter, on or about December 13, 2007, a person or persons, believed to be Dubose indorsed Plaintiffs' signature to the check and received payment for it in the amount of $13,500.00 from Defendant BOV, the drawee of the check, or Defendant Dubose deposited the instrument into his personal checking account located at Defendant BOV.

d.      On December 20, 2007, for value received, Greene County, Alabama, executed and delivered a subsidy check payable to Emergystat, Inc. as the payee, in the amount of $6,500.00. On December 28, 2007, before Emergystat, Inc., was able to endorse or deposit the check to its account, the check was taken by Clanton Dubose. Thereafter, on or about December 28, 2007, a person or persons, believed to be Dubose indorsed Emergystat Inc.'s signature to the check and received payment for it in the amount of $6,500.00 from Defendant BOV, the drawee of the check, or Defendant Dubose deposited the instrument into his personal checking account located at Defendant BOV.

e.      On December 26, 2007, for value received, Tennessee Medicare executed and delivered a check payable to Southland Health Services, Inc., as the payee, in the amount of $5,438.21. On January 2, 2008, before Southland Health Services, Inc. was able to endorse or deposit the check to its account, the check was taken by Clanton

Dubose.  Thereafter, on or about January 2, 2008, a person or persons, believed to be Dubose indorsed Southland Health Services, Inc.'s signature to the check and received payment for it in the amount of $5,438.21 from Defendant BOV, the drawee of the check, or Defendant Dubose deposited the instrument into his personal checking account located at Defendant BOV.

      f.      On December 27, 2007, for value received, Noxubee County, Mississippi, executed and delivered a subsidy check payable to Emergystat, Inc., as the payee, in the amount of $8,000.00.  On December 31, 2007, before Emergystat, Inc. was able to endorse or deposit the check to its account, the check was taken by Clanton Dubose.  Thereafter, on or about December 31, 2007, a person or persons, believed to be Dubose indorsed Emergystat, Inc.'s signature to the check and received payment for it in the amount of $8,000.00 from Defendant BOV, the drawee of the check, or Defendant Dubose deposited the instrument into his personal checking account located at Defendant BOV.

      g.      On December 27, 2007, for value received, Mississippi Medicare executed and delivered a check payable to Med Express, LLC, as the payee, in the amount of $25,160.94.  On January 7, 2008, before Med Express, LLC. was able to endorse or deposit the check to its account, the check was taken by Clanton Dubose.  Thereafter, on or about January 7, 2008, a person or persons, believed to be Dubose indorsed Med Express, LLC.'s signature to the check and received payment for it in the amount of $25,160.94 from Defendant BOV, the drawee of the check, or Defendant Dubose deposited the instrument into his personal checking account located at Defendant BOV.

      h.      On December 31, 2007, for value received, BlueCrossBlueShield ("BCBS") of Georgia executed and delivered a check payable to Southland Health Services of Georgia, Inc., as the payee, in the amount of $3,285.04.  On January 7, 2008, before Southland Health Services of Georgia, Inc. was able to endorse or deposit the check to its account, the check was taken by Clanton Dubose.  Thereafter, on or about January 7, 2008, a person or persons, believed to be Dubose indorsed Southland Health Services of Georgia, Inc.'s signature to the check and received payment for it in the amount of $3,285.04 from Defendant BOV, the drawee of the check, or Defendant Dubose deposited the instrument into his personal checking account located at Defendant BOV.

      i.      On December 31, 2007, for value received, BCBS of Mississippi executed and delivered a check payable to Med Express, LLC, as the payee, in the amount of $2,088.40.  On January 7, 2008, before Med Express, LLC was able to endorse or deposit the check to its account, the check was taken by Clanton Dubose.  Thereafter, on or about January 7, 2008, a person or persons, believed to be Dubose indorsed Med Express, LLC's signature to the check and received payment for it in the amount of $2,088.40 from Defendant BOV, the drawee of the check, or Defendant Dubose deposited the instrument into his personal checking account located at Defendant BOV.

      j.      On January 4, 2008, for value received, Mississippi Medicare executed

and delivered a check payable to Med Express, LLC, as the payee, in the amount of $25,714.53. On January 14, 2008, before Med Express, LLC was able to endorse or deposit the check to its account, the check was taken by Clanton Dubose. Thereafter, on or about January 14, 2008, a person or persons, believed to be Dubose indorsed Med Express, LLC's signature to the check and received payment for it in the amount of $25,714.53 from Defendant BOV, the drawee of the check, or Defendant Dubose deposited the instrument into his personal checking account located at Defendant BOV.

k.      On January 4, 2008, for value received, Mississippi Medicare executed and delivered a check payable to Med Express, LLC, as the payee, in the amount of $25,634.87. On January 14, 2008, before Med Express, LLC was able to endorse or deposit the check to its account, the check was taken by Clanton Dubose. Thereafter, on or about January 14, 2008, a person or persons, believed to be Dubose indorsed Med Express, LLC's signature to the check and received payment for it in the amount of $25,634.87 from Defendant BOV, the drawee of the check, or Defendant Dubose deposited the instrument into his personal checking account located at Defendant BOV.

l.       On January 10, 2008, for value received, Virginia Medicare executed and delivered a check payable to Southland Health Services, Inc., as the payee, in the amount of $15,831.67. On January 14, 2008, before Southland Health Services, Inc. was able to endorse or deposit the check to its account, the check was taken by Clanton Dubose. Thereafter, on or about January 14, 2008, a person or persons, believed to be Dubose indorsed Southland Health Services, Inc.'s signature to the check and received payment for it in the amount of $15,831.67 from Defendant BOV, the drawee of the check, or Defendant Dubose deposited the instrument into his personal checking account located at Defendant BOV.

m.      On January 11, 2008, for value received, Magee Hospital executed and delivered a check payable to Med Express, LLC, as the payee, in the amount of $1,734.05. On January 14, 2008, before Med Express, LLC was able to endorse or deposit the check to its account, the check was taken by Clanton Dubose. Thereafter, on or about January 14, 2008, a person or persons, believed to be Dubose indorsed Med Express, LLC's signature to the check and received payment for it in the amount of $1,734.05 from Defendant BOV, the drawee of the check, or Defendant Dubose deposited the instrument into his personal checking account located at Defendant BOV.

n.      On January 16, 2008, for value received, Trail Blazer Health Enterprises, LLC executed and delivered Medicare B of Virginia check payable to Southland Health Services, Inc., as the payee, in the amount of $10,123.52. On January 21, 2008, before Southland Health Services, Inc. was able to endorse or deposit the check to its account, the check was taken by Clanton Dubose. Thereafter, on or about January 21, 2008, a person or persons, believed to be Dubose indorsed Southland Health Services, Inc.'s signature to the check and received payment for it in the amount of $10,123.52 from Defendant BOV, the drawee of the check, or Defendant Dubose deposited the instrument into his personal checking account located at Defendant BOV.

o.      On March 25, 2008 for value received, Anthem. executed and delivered a check payable to Southland Health Services, Inc., as the payee, in the amount of $137.49. On May 27, 2008, before Southland Health Services, Inc. was able to endorse or deposit the check to its account, the check was taken by Clanton Dubose. Thereafter, on or about May 27, 2008, a person or persons, believed to be Dubose indorsed Southland Health Services, Inc.'s signature to the check and received payment for it in the amount of $137.49 from Defendant BOV, the drawee of the check, or Defendant Dubose deposited the instrument into his personal checking account located at Defendant BOV.

p.      On April 16, 2008 for value received, Tennessee Medicare executed and delivered a check payable to Southland Health Services, Inc., as the payee, in the amount of $235.63. On May 9, 2008, before Southland Health Services, Inc. was able to endorse or deposit the check to Plaintiffs' account, the check was taken by Clanton Dubose. Thereafter, on or about May 9, 2008, a person or persons, believed to be Dubose indorsed Southland Health Services, Inc.'s signature to the check and received payment for it in the amount of $235.63 from Defendant BOV, the drawee of the check, or Defendant Dubose deposited the instrument into his personal checking account located at Defendant BOV.

q.      On April 15, 2008 for value received, Alternative Benefit Plans, Inc. executed and delivered a check payable to Southland Health Services, Inc., as the payee, in the amount of $410.80. On May 27, 2008, before Southland Health Services, Inc. were able to endorse or deposit the check to its account, the check was taken by Clanton Dubose. Thereafter, on or about May 27, 2008, a person or persons, believed to be Dubose indorsed Southland Health Services, Inc.'s signature to the check and received payment for it in the amount of $410.80 from Defendant BOV, the drawee of the check, or Defendant Dubose deposited the instrument into his personal checking account located at Defendant BOV.

r.      On April 18, 2008 for value received, United Health Care executed and delivered a check payable to Southland Health Services, Inc., as the payee, in the amount of $104.99. On May 9, 2008, before Southland Health Services, Inc. was able to endorse or deposit the check to its account, the check was taken by Clanton Dubose. Thereafter, on or about May 9, 2008, a person or persons, believed to be Dubose indorsed Southland Health Services, Inc.'s signature to the check and received payment for it in the amount of $104.99 from Defendant BOV, the drawee of the check, or Defendant Dubose deposited the instrument into his personal checking account located at Defendant BOV.

s.      On April 24, 2008 for value received, First Health executed and delivered a check payable to Southland Health Services, Inc., as the payee, in the amount of $964.76. On May 2, 2008, before Southland Health Services, Inc. was able to endorse or deposit the check to its account, the check was taken by Clanton Dubose. Thereafter, on or about May 2, 2008, a person or persons, believed to be Dubose indorsed Southland Health Services, Inc.'s signature to the check and received payment for it in the amount of $964.76 from Defendant Bank of Vernon, the drawee of the check, or Defendant Dubose deposited the instrument into his personal checking account located at Defendant

Bank of Vernon.

t.      On May 5, 2008 for value received, Aetna executed and delivered a check payable to Southland Health Services, Inc., as the payee, in the amount of $386.04.  On May 20, 2008, before Southland Health Services, Inc. was able to endorse or deposit the check to its account, the check was taken by Clanton Dubose.  Thereafter, on or about May 20, 2008, a person or persons, believed to be Dubose indorsed Southland Health Services, Inc.'s signature to the check and received payment for it in the amount of $386.04 from Defendant BOV, the drawee of the check, or Defendant Dubose deposited the instrument into his personal checking account located at Defendant BOV.

u.      On May 6, 2008 for value received, Anthem executed and delivered a check payable to Southland Health Services, Inc., as the payee, in the amount of $535.77.  On May 20, 2008, before Southland Health Services, Inc. was able to endorse or deposit the check to its account, the check was taken by Clanton Dubose.  Thereafter, on or about May 20, 2008, a person or persons, believed to be Dubose indorsed Southland Health Services, Inc.'s signature to the check and received payment for it in the amount of $535.77 from Defendant BOV, the drawee of the check, or Defendant Dubose deposited the instrument into his personal checking account located at Defendant BOV.

v.      On May 13, 2008 for value received, Anthem executed and delivered a check payable to Southland Health Services, Inc., as the payee, in the amount of $295.16.  On May 20, 2008 before Southland Health Services, Inc. was able to endorse or deposit the check to its account, the check was taken by Clanton Dubose.  Thereafter, on or about May 20, 2008, a person or persons, believed to be Dubose indorsed Southland Health Services, Inc.'s signature to the check and received payment for it in the amount of $295.16 from Defendant BOV, the drawee of the check, or Defendant Dubose deposited the instrument into his personal checking account located at Defendant BOV.

w.      On May 13, 2008 for value received, Southern Care executed and delivered a check payable to Southland Health Services of Georgia, Inc., as the payee, in the amount of $173.60.  On May 27, 2008 before Southland Health Services of Georgia, Inc. was able to endorse or deposit the check to its account, the check was taken by Clanton Dubose.  Thereafter, on or about May 27, 2008, a person or persons, believed to be Dubose indorsed Southland Health Services of Georgia, Inc.'s signature to the check and received payment for it in the amount of $173.60 from Defendant BOV, the drawee of the check, or Defendant Dubose deposited the instrument into his personal checking account located at Defendant BOV.

x.      On May 16, 2008 for value received, Railroad Medicare executed and delivered a check payable to Southland Health Services, Inc., as the payee, in the amount of $150.08.  On May 27, 2008, before Southland Health Services, Inc. was able to endorse or deposit the check to its account, the check was taken by Clanton Dubose.  Thereafter, on or about May 27, 2008, a person or persons, believed to be Dubose indorsed Southland Health Services, Inc.'s signature to the check and received payment for it in the amount of $150.08 from Defendant BOV, the drawee of the check, or

Defendant Dubose deposited the instrument into his personal checking account located at Defendant BOV.

y.      On May 20, 2008 for value received, Anthem executed and delivered a check payable to Southland Health Services, Inc., as the payee, in the amount of $314.07. On June 18, 2008 before Southland Health Services, Inc. was able to endorse or deposit the check to its account, the check was taken by Clanton Dubose.  Thereafter, on or about June 18, 2008, a person or persons, believed to be Dubose indorsed Southland Health Services, Inc.'s signature to the check and received payment for it in the amount of $314.07 from Defendant BOV, the drawee of the check, or Defendant Dubose deposited the instrument into his personal checking account located at Defendant BOV.

z.      On May 22, 2008 for value received, Well Care executed and delivered a check payable to Southland Health Services of Georgia, Inc., as the payee, in the amount of $310.50.  On June 18, 2008 before Southland Health Services of Georgia, Inc. was able to endorse or deposit the check to its account, the check was taken by Clanton Dubose.  Thereafter, on or about June 18, 2008, a person or persons, believed to be Dubose indorsed Southland Health Services of Georgia, Inc.'s signature to the check and received payment for it in the amount of $310.50 from Defendant BOV, the drawee of the check, or Defendant Dubose deposited the instrument into his personal checking account located at Defendant BOV.

aa.      On May 26, 2008 for value received, AARP executed and delivered a check payable to Southland Health Services, Inc., as the payee, in the amount of $541.68. On June 18, 2008 before Southland Health Services, Inc. was able to endorse or deposit the check its account, the check was taken by Clanton Dubose.  Thereafter, on or about June 18, 2008, a person or persons, believed to be Dubose indorsed Southland Health Services, Inc.'s signature to the check and received payment for it in the amount of $541.68 from Defendant BOV, the drawee of the check, or Defendant Dubose deposited the instrument into his personal checking account located at Defendant BOV.

bb.      On May 28, 2008 for value received, Evergreen Nursing Home executed and delivered a check payable to Southland Health Services, Inc., as the payee, in the amount of $376.00.  On June 18, 2008 before Southland Health Services, Inc. was able to endorse or deposit the check to its account, the check was taken by Clanton Dubose. Thereafter, on or about June 18, 2008, a person or persons, believed to be Dubose indorsed Southland Health Services, Inc.'s signature to the check and received payment for it in the amount of $376.00 from Defendant BOV, the drawee of the check, or Defendant Dubose deposited the instrument into his personal checking account located at Defendant BOV.

cc.      On May 30, 2008 for value received, Tennessee Medicare executed and delivered a check payable to Southland Health Services, Inc., as the payee, in the amount of $263.05.  On June 4, 2008 before Southland Health Services, Inc. was able to endorse or deposit the check to its account, the check was taken by Clanton Dubose.  Thereafter, on or about June 4, 2008, a person or persons, believed to be Dubose indorsed Southland

Health Services, Inc.'s signature to the check and received payment for it in the amount of $137.49 from Defendant BOV, the drawee of the check, or Defendant Dubose deposited the instrument into his personal checking account located at Defendant BOV.

dd.    On June 2, 2008 for value received, Cartersville Nursing Home executed and delivered a check payable to Southland Health Services, Inc., as the payee, in the amount of $150.90.  On June 18, 2008 before Southland Health Services, Inc. was able to endorse or deposit the check to its account, the check was taken by Clanton Dubose. Thereafter, on or about June 18, 2008, a person or persons, believed to be Dubose indorsed Southland Health Services, Inc.'s signature to the check and received payment for it in the amount of $150.90 from Defendant BOV, the drawee of the check, or Defendant Dubose deposited the instrument into his personal checking account located at Defendant BOV.

ee.    On June 2, 2008 for value received, Department of Virginia executed and delivered a check payable to Southland Health Services of Georgia, Inc., as the payee, in the amount of $578.00.  On June 18, 2008 before Southland Health Services of Georgia, Inc. was able to endorse or deposit the check to its account, the check was taken by Clanton Dubose.  Thereafter, on or about June 18, 2008, a person or persons, believed to be Dubose indorsed Southland Health Services of Georgia, Inc. 's signature to the check and received payment for it in the amount of $578.00 from Defendant BOV, the drawee of the check, or Defendant Dubose deposited the instrument into his personal checking account located at Defendant BOV.

ff.    On June 3, 2008 for value received, United Health Care executed and delivered a check payable to Southland Health Services, Inc., as the payee, in the amount of $475.35.  On June 18, 2008 before Southland Health Services, Inc. was able to endorse or deposit the check to its account, the check was taken by Clanton Dubose.  Thereafter, on or about June 18, 2008, a person or persons, believed to be Dubose indorsed Southland Health Services, Inc.'s signature to the check and received payment for it in the amount of $475.35 from Defendant BOV, the drawee of the check, or Defendant Dubose deposited the instrument into his personal checking account located at Defendant BOV.

gg.    On June 6, 2008 for value received, Humana Gold executed and delivered a check payable to Southland Health Services, Inc., as the payee, in the amount of $197.18.  On June 18, 2008 before Southland Health Services, Inc. was able to endorse or deposit the check to its account, the check was taken by Clanton Dubose.  Thereafter, on or about June 18, 2008, a person or persons, believed to be Dubose indorsed Southland Health Services, Inc.'s signature to the check and received payment for it in the amount of $197.18 from Defendant BOV, the drawee of the check, or Defendant Dubose deposited the instrument into his personal checking account located at Defendant BOV.

hh.    On June 10, 2008 for value received, United Health Care executed and delivered a check payable to Southland Health Services, Inc., as the payee, in the amount of $483.39.  On June 18, 2008 before Southland Health Services, Inc. was able to endorse

or deposit the check to its account, the check was taken by Clanton Dubose. Thereafter, on or about June 18, 2008, a person or persons, believed to be Dubose indorsed Southland Health Services, Inc.'s signature to the check and received payment for it in the amount of $483.39 from Defendant BOV, the drawee of the check, or Defendant Dubose deposited the instrument into his personal checking account located at Defendant BOV.

      ii.     On June 14, 2008 for value received, Anthem executed and delivered a check payable to Southland Health Services, Inc., as the payee, in the amount of $740.55. On July 11, 2008 before Southland Health Services, Inc. was able to endorse or deposit the check to its account, the check was taken by Clanton Dubose. Thereafter, on or about July 11, 2008, a person or persons, believed to be Dubose indorsed Southland Health Services, Inc.'s signature to the check and received payment for it in the amount of $740.55 from Defendant BOV, the drawee of the check, or Defendant Dubose deposited the instrument into his personal checking account located at Defendant BOV.

      jj.     On June 16, 2008 for value received, Aetna executed and delivered a check payable to Southland Health Services, Inc., as the payee, in the amount of $581.20. On July 11, 2008 before Southland Health Services, Inc. was able to endorse or deposit the check to its account, the check was taken by Clanton Dubose. Thereafter, on or about July 11, 2008, a person or persons, believed to be Dubose indorsed Southland Health Services, Inc.'s signature to the check and received payment for it in the amount of $581.20 from Defendant BOV, the drawee of the check, or Defendant Dubose deposited the instrument into his personal checking account located at Defendant BOV.

      kk.    On June 25, 2008 for value received, Humana Health executed and delivered a check payable to Southland Health Services, Inc., as the payee, in the amount of $373.98. On July 11, 2008 before Southland Health Services, Inc. was able to endorse or deposit the check to its account, the check was taken by Clanton Dubose. Thereafter, on or about July 11, 2008, a person or persons, believed to be Dubose indorsed Southland Health Services, Inc.'s signature to the check and received payment for it in the amount of $373.98 from Defendant Bank of Vernon, the drawee of the check, or Defendant Dubose deposited the instrument into his personal checking account located at Defendant Bank of Vernon.

      ll.     On June 27, 2008 for value received, Laurel Health executed and delivered a check payable to Southland Health Services, Inc., as the payee, in the amount of $422.22. On July 11, 2008 before Southland Health Services, Inc. was able to endorse or deposit the check to its account, the check was taken by Clanton Dubose. Thereafter, on or about July 11, 2008, a person or persons, believed to be Dubose indorsed Southland Health Services, Inc.'s signature to the check and received payment for it in the amount of $422.22 from Defendant BOV, the drawee of the check, or Defendant Dubose deposited the instrument into his personal checking account located at Defendant BOV.

      mm.   On July 3, 2008 for value received, Care Improvement executed and delivered a check payable to Southland Health Services of Georgia, Inc., as the payee, in

the amount of $804.36.  On July 11, 2008 before Southland Health Services of Georgia, Inc. was able to endorse or deposit the check to its account, the check was taken by Clanton Dubose.  Thereafter, on or about July 11, 2008, a person or persons, believed to be Dubose indorsed Southland Health Services of Georgia, Inc.'s signature to the check and received payment for it in the amount of $804.36 from Defendant Bank of Vernon, the drawee of the check, or Defendant Dubose deposited the instrument into his personal checking account located at Defendant Bank of Vernon.

nn.     On July 3, 2008 for value received, AARP executed and delivered a check payable to Southland Health Services, Inc., as the payee, in the amount of $556.52.  On July 11, 2008 before Southland Health Services, Inc. was able to endorse or deposit the check to its account, the check was taken by Clanton Dubose.  Thereafter, on or about July 11, 2008, a person or persons, believed to be Dubose indorsed Southland Health Services, Inc.'s signature to the check and received payment for it in the amount of $556.52 from Defendant BOV, the drawee of the check, or Defendant Dubose deposited the instrument into his personal checking account located at Defendant BOV.

oo.     On July 12, 2008 for value received, Bradley Bennett executed and delivered a check payable to Southland Health Services, Inc., as the payee, in the amount of $216.50.  On July 31, 2008 before Southland Health Services, Inc. was able to endorse or deposit the check to its account, the check was taken by Clanton Dubose.  Thereafter, on or about July 31, 2008, a person or persons, believed to be Dubose indorsed Southland Health Services, Inc.'s signature to the check and received payment for it in the amount of $216.50 from Defendant BOV, the drawee of the check, or Defendant Dubose deposited the instrument into his personal checking account located at Defendant BOV.

pp.     On July 14, 2008 for value received, Physicians Mutual executed and delivered a check payable to Southland Health Services of Alabama, Inc., as the payee, in the amount of $403.22.  On July 31, 2008 before Southland Health Services of Alabama, Inc. were able to endorse or deposit the check to its account, the check was taken by Clanton Dubose.  Thereafter, on or about July 31, 2008, a person or persons, believed to be Dubose indorsed Southland Health Services of Alabama, Inc.'s signature to the check and received payment for it in the amount of $403.22 from Defendant BOV, the drawee of the check, or Defendant Dubose deposited the instrument into his personal checking account located at Defendant BOV.

qq.     On July 15, 2008 for value received, Anthem executed and delivered a check payable to Southland Health Services, Inc., as the payee, in the amount of $216.00.  On July 31, 2008 before Southland Health Services, Inc. was able to endorse or deposit the check to its account, the check was taken by Clanton Dubose.  Thereafter, on or about July 31, 2008, a person or persons, believed to be Dubose indorsed Southland Health Services, Inc.'s signature to the check and received payment for it in the amount of $216.00 from Defendant BOV, the drawee of the check, or Defendant Dubose deposited the instrument into his personal checking account located at Defendant BOV.

rr.     On July 18, 2008 for value received, AARP executed and delivered a

check payable to Southland Health Services, Inc., as the payee, in the amount of $920.42. On July 31, 2008 before Southland Health Services, Inc. was able to endorse or deposit the check to its account, the check was taken by Clanton Dubose. Thereafter, on or about July 31, 2008, a person or persons, believed to be Dubose indorsed Southland Health Services, Inc.'s signature to the check and received payment for it in the amount of $920.42 from Defendant BOV, the drawee of the check, or Defendant Dubose deposited the instrument into his personal checking account located at Defendant BOV.

ss.     On July 24, 2008 for value received, BCBC of Alabama executed and delivered a check payable to Southland Health Services of Alabama, Inc., as the payee, in the amount of $472.13. On July 31, 2008 before Southland Health Services of Alabama, Inc. was able to endorse or deposit the check to its account, the check was taken by Clanton Dubose. Thereafter, on or about July 31, 2008, a person or persons, believed to be Dubose indorsed Southland Health Services of Alabama, Inc.'s signature to the check and received payment for it in the amount of $472.13 from Defendant BOV, the drawee of the check, or Defendant Dubose deposited the instrument into his personal checking account located at Defendant BOV.

tt.     On July 24, 2008 for value received, BCBC of Alabama executed and delivered a check payable to Southland Health Services of Alabama, Inc., as the payee, in the amount of $493.02. On July 31, 2008 before Southland Health Services of Alabama, Inc. was able to endorse or deposit the check to its account, the check was taken by Clanton Dubose. Thereafter, on or about July 31, 2008, a person or persons, believed to be Dubose indorsed Southland Health Services of Alabama, Inc.'s signature to the check and received payment for it in the amount of $493.02 from Defendant BOV, the drawee of the check, or Defendant Dubose deposited the instrument into his personal checking account located at Defendant BOV.

uu.     On July 24, 2008 for value received, Preferred Care executed and delivered a check payable to Southland Health Services, Inc., as the payee, in the amount of $499.05. On July 31, 2008 before Southland Health Services, Inc. was able to endorse or deposit the check to its account, the check was taken by Clanton Dubose. Thereafter, on or about July 31, 2008, a person or persons, believed to be Dubose indorsed Southland Health Services, Inc.'s signature to the check and received payment for it in the amount of $499.05 from Defendant BOV, the drawee of the check, or Defendant Dubose deposited the instrument into his personal checking account located at Defendant BOV.

vv.     On July 28, 2008 for value received, Ledford Trucking executed and delivered a check payable to Southland Health Services, Inc., as the payee, in the amount of $630.35. On August 25, 2008 before Southland Health Services, Inc. was able to endorse or deposit the check to its account, the check was taken by Clanton Dubose. Thereafter, on or about August 25, 2008, a person or persons, believed to be Dubose indorsed Southland Health Services, Inc.'s signature to the check and received payment for it in the amount of $630.35 from Defendant BOV, the drawee of the check, or Defendant Dubose deposited the instrument into his personal checking account located at Defendant BOV.

ww.     On July 29, 2008 for value received, Anthem executed and delivered a check payable to Southland Health Services, Inc., as the payee, in the amount of $765.68. On August 25, 2008 before Southland Health Services, Inc. was able to endorse or deposit the check to its account, the check was taken by Clanton Dubose.  Thereafter, on or about August 25, 2008, a person or persons, believed to be Dubose indorsed Southland Health Services, Inc.'s signature to the check and received payment for it in the amount of $765.68 from Defendant BOV, the drawee of the check, or Defendant Dubose deposited the instrument into his personal checking account located at Defendant BOV.

xx.     On July 29, 2008 for value received, Health Spring of Alabama executed and delivered a check payable to Southland Health Services of Alabama, Inc., as the payee, in the amount of $455.10.  On August 25, 2008 before Southland Health Services of Alabama, Inc. was able to endorse or deposit the check to its account, the check was taken by Clanton Dubose.  Thereafter, on or about August 25, 2008, a person or persons, believed to be Dubose indorsed Southland Health Services of Alabama, Inc.'s signature to the check and received payment for it in the amount of $455.10 from Defendant BOV, the drawee of the check, or Defendant Dubose deposited the instrument into his personal checking account located at Defendant BOV.

yy.     On August 1, 2008 for value received, Penn Treaty Network executed and delivered a check payable to Southland Health Services, Inc., as the payee, in the amount of $402.10.  On August 25, 2008 before Southland Health Services, Inc. was able to endorse or deposit the check to its account, the check was taken by Clanton Dubose. Thereafter, on or about August 25, 2008, a person or persons, believed to be Dubose indorsed Southland Health Services, Inc.'s signature to the check and received payment for it in the amount of $402.10 from Defendant BOV, the drawee of the check, or Defendant Dubose deposited the instrument into his personal checking account located at Defendant BOV.

zz.     On August 4, 2008 for value received, Optima executed and delivered a check payable to Southland Health Services, Inc., as the payee, in the amount of $381.30. On August 25, 2008 before Southland Health Services, Inc. was able to endorse or deposit the check to its account, the check was taken by Clanton Dubose.  Thereafter, on or about August 25, 2008, a person or persons, believed to be Dubose indorsed Southland Health Services, Inc.'s signature to the check and received payment for it in the amount of $381.30 from Defendant BOV, the drawee of the check, or Defendant Dubose deposited the instrument into his personal checking account located at Defendant BOV.

aaa.     On August 7, 2008 for value received, Aetna executed and delivered a check payable to Southland Health Services, Inc., as the payee, in the amount of $514.87. On August 25, 2008 before Southland Health Services, Inc. was able to endorse or deposit the check to its account, the check was taken by Clanton Dubose.  Thereafter, on or about August 25, 2008, a person or persons, believed to be Dubose indorsed Southland Health Services, Inc.'s signature to the check and received payment for it in the amount of $514.87 from Defendant BOV, the drawee of the check, or Defendant Dubose

deposited the instrument into his personal checking account located at Defendant BOV.

bbb.    On August 12, 2008 for value received, Anthem executed and delivered a check payable to Southland Health Services, Inc., as the payee, in the amount of $571.33. On August 25, 2008 before Southland Health Services, Inc. was able to endorse or deposit the check to Plaintiffs' account, the check was taken by Clanton Dubose. Thereafter, on or about August 25, 2008, a person or persons, believed to be Dubose indorsed Southland Health Services, Inc.'s signature to the check and received payment for it in the amount of $571.33 from Defendant BOV, the drawee of the check, or Defendant Dubose deposited the instrument into his personal checking account located at Defendant BOV.

ccc.    On August 12, 2008 for value received, American executed and delivered a check payable to Southland Health Services, Inc., as the payee, in the amount of $236.00. On August 25, 2008 before Southland Health Services, Inc. was able to endorse or deposit the check to its account, the check was taken by Clanton Dubose. Thereafter, on or about August 25, 2008, a person or persons, believed to be Dubose indorsed Southland Health Services, Inc.'s signature to the check and received payment for it in the amount of $236.00 from Defendant BOV, the drawee of the check, or Defendant Dubose deposited the instrument into his personal checking account located at Defendant BOV.

60.    In each of the instances detailed in paragraphs 59.a. through 59.ccc., it was apparent that a check made payable to a corporation was being deposited to personal account of Defendant Dubose. It was known by Defendant BOV's management and employees that Defendant Dubose had an employment relationship with the corporations named as payee in paragraphs 59a. through 59.ccc. However, Defendant BOV negotiated the checks in question without payee corporation's verbal or written authorization. And, no attempt was made to contact the payee corporation prior to negotiation of the said instruments.

61.    At the time that the instruments identified in paragraphs 59.a. through 59.ccc. were cashed or deposited, in addition to having knowledge of Defendant Dubose's employment relationship, the management and employees of Defendant BOV knew Defendant Dubose maintained a personal bank account at as well as personal loans with BOV. Furthermore, Defendant Dubose was a native of Vernon, Alabama who was personally known to the management and employees of BOV.

62.    On or about October 30, 2008, each of the corporate payees of the checks identified in paragraphs 59.a. through 59.ccc. discovered that the checks in question were missing. The missing checks were deliberately obscured from the corporations due to assistance received from Defendant Dudley Bell in keeping the relevant bank statements hidden from Mr. Lunan and any other officers and/or employees that were not a part of the Dubose, Bell, Walls and Bradford conspiracy to destroy the company. Upon the discovery of the missing checks, Plaintiffs immediately advised Defendant BOV of the fact that the checks identified in paragraphs 59.a. through 59.ccc. had been stolen.

Defendant BOV confirmed that these checks had been indorsed by Defendant Dubose and paid to him or deposited to his personal account.

63.     Southland on its own behalf and on behalf of its subsidiaries has requested that Defendant BOV repay to it and its subsidiaries the amounts of the converted checks identified in paragraphs 59.a. through 59.ccc.  However, Defendant BOV refused and continues to refuse to repay to the amounts represented by the checks identified in paragraphs 59.a. through 59.ccc.

64.     In light of the foregoing paragraphs, Defendant BOV acted in bad faith in accepting for payment or deposit the instruments identified 59.a. through 59.ccc. as well as refusing to repay the amounts represented by such instruments.  The acceptance for deposit and cashing of the instruments in question and the refusal to repay the monies in question was and is in direct contravention to commercially reasonable practices and results in a conversion of the corporate funds of the payees identified in paragraphs 59.a. through 59.ccc.

        **WHEREFORE, PREMISES CONSIDERED**, Plaintiffs request that, under the authority of sections 4-3-306 and 4-3-420 of the *Code of Alabama* 1975, as amended, this Court award Plaintiffs judgment against Defendant Bank of Vernon, in an amount not less than $180,000.00, together with legal interest on that amount from September 4, 2007. plaintiff costs of suit; and grant such other and further relief as it deems just and proper.

## COUNT III
## VIOLATION OF CODE OF ALABAMA 7-4A-201 et seq.

64.     Plaintiffs reallege and incorporate by reference all preceding paragraphs and counts as though fully set forth herein.

65.     Defendant Bell stole checks payable to Southland or an affiliated subsidiary, indorsed these checks, and deposited said checks into his personal account as detailed by the following:

        a.      On or about January 30, 2006, Defendant Bell instructed Defendant BOV to transfer $654.16 from Emergstat, Inc.'s ("Emergystat") BOV corporate account to Defendant Bell's personal account at Americredit.  Emegystat has suffered a loss in the amount of $654.16 as a result of the Defendant  BOV charging its bank account for this amount.

        b.      On or about March 3, 2006, Defendant Bell instructed Defendant BOV to transfer $639.56 from Emergystat's BOV corporate account to Defendant Bell's personal account at Americredit.  Emergystat has suffered a loss in the amount of $639.56 as a result of the Defendant  BOV charging  its bank account for this amount.

c.     On or about April 11, 2006, Defendant Bell instructed Defendant BOV to transfer $1,299.12 from Emergystat's BOV corporate account to Defendant Bell's personal account at Americredit.   Emergystat has suffered a loss in the amount of $1,299.12 as a result of the Defendant  BOV charging its bank account for this amount.

d.     On or about June 1, 2006, Defendant Bell instructed Defendant BOV to transfer $1,324.12 from Emergystat's BOV corporate account to Defendant Bell's personal account at Americredit.   Emergystat has suffered a loss in the amount of $1,324.12 as a result of the Defendant  BOV charging its bank account for this amount.

e.     On or about August 9, 2006, Defendant Bell instructed Defendant BOV to transfer $1,304.12 from Emergystat's BOV corporate account to Defendant Bell's personal account at Americredit.   Emergystat has suffered a loss in the amount of $1,304.12 as a result of the Defendant  BOV charging its bank account for this amount.

f.     On or about September 15, 2006,  Defendant Dubose instructed Defendant BOV to transfer $50,000 from Emergystat's BOV corporate account to Defendant Dubose, personal account at Bank Plus.  Emergystat has suffered a loss in the amount of $50,000 as a result of the Defendant  BOV charging its bank account for this amount.

g.     On or about October 11, 2007, Defendant Bell instructed Defendant BOV to transfer $1,953.68 from Emergystat's BOV corporate account to Defendant Bell's personal account at Americredit.  Emergystat suffered a loss in the amount of $1,953.68 as a result of the Defendant  BOV charging its bank account for this amount.

h.     On or about October 11, 2006, Defendant Bell instructed Defendant BOV to transfer $1,304.12 from Emergystat's BOV corporate account to Defendant Bell's personal account at Americredit.   Emergystat has suffered a loss in the amount of $1,304.12 as a result of the Defendant  BOV charging its bank account for this amount.

i.     On or about November 24, 2006, Defendant Bell instructed Defendant BOV to transfer $1,304.12 from Emergystat's BOV corporate account to Defendant Bell's personal account at Americredit.  Emergystat, Inc. has suffered a loss in the amount of $1,304.12 as a result of the Defendant BOV charging its bank account for this amount.

j.     On or about January 30, 2007, Defendant Bell instructed Defendant BOV to transfer $1,304.12 from Emergystat's BOV corporate account to Defendant Bell's personal account at Americredit.   Emergystat has suffered a loss in the amount of $1,304.12 as a result of the Defendant   BOV charging the its bank account for this amount.

k.     On or about April 5, 2007, Defendant Bell instructed Defendant BOV to transfer $1,304.12 from Emergystat's BOV corporate account to Defendant Bell's personal account at Americredit.   Emergystat has suffered a loss in the amount of $1,304.12 as a result of the Defendant  BOV charging its bank account for this amount.

l.      On or about June 5, 2007, Defendant Bell instructed Defendant BOV to transfer $1,304.12 from Emergystat's BOV corporate account to Defendant Bell's personal account at Americredit.   Emergystat has suffered a loss in the amount of $1,304.12 as a result of the Defendant  BOV charging its bank account for this amount.

m.      On or about August 10, 2007, Defendant Bell instructed Defendant Bank of Vernon to transfer $1,304.12 from Emergystat's BOV corporate account to Defendant Bell's personal account at Americredit.   Emergystat has suffered a loss in the amount of $1,304.12 as a result of the Defendant  BOV charging its bank account for this amount.

n.      On or about January 14, 2008, Defendant Bell instructed Defendant BOV to transfer $1,299.12 from Emergystat's BOV corporate account to Defendant Bell's personal account at Americredit.   Emergystat has suffered a loss in the amount of $1,299.12 as a result of the Defendant  BOV charging its bank account for this amount.

o.      On or about March 18, 2008, Defendant Bell instructed Defendant BOV to transfer $1,299.12 from Emergystat's BOV corporate account to Defendant Bell's personal account at Americredit.    Emergystat has suffered a loss in the amount of $1,299.12 as a result of the Defendant  BOV charging its bank account for this amount.

p.      On or about April 21, 2008, Defendant Bell instructed Defendant BOV to transfer $510.59 from TWC, Inc.'s ("TWC"), BOV corporate account to Defendant Bell's personal account at HSBC Card Services.  TWC has suffered a loss in the amount of $510.59 as a result of the Defendant  BOV charging its bank account for this amount.

q.      On or about April 29, 2008, Defendant Bell instructed Defendant BOV to transfer $688.61 from TWC's BOV corporate account to Defendant Bell's personal account at HSBC Card Services.  TWC has suffered a loss in the amount of $688.61 as a result of the Defendant  BOV charging its bank account for this amount.

r.      On or about May 9, 2008, Defendant Bell instructed Defendant BOV to transfer $330.00 from Emergystat's BOV corporate account to Defendant Bell's personal account at HSBC Card Services.  Emergystat has suffered a loss in the amount of $330.00 as a result of the Defendant  BOV charging its bank account for this amount.

s.      On or about May 15, 2008, Defendant Bell instructed Defendant BOV to transfer $565.81 from the Emergystat's BOV corporate account to Defendant Bell's personal account at HSBC Card Services.  Emergystat, has suffered a loss in the amount of $565.81 as a result of the Defendant  BOV charging its bank account for this amount.

t.      On or about May 20, 2008, Defendant Bell instructed Defendant BOV to transfer $226.63 from Emergystat's BOV corporate account to Defendant Bell's personal account at HSBC Card Services.  Emergystat has suffered a loss in the amount of $226.63 as a result of the Defendant  BOV charging its bank account for this amount.

u.      On or about May 27, 2008, Defendant Bell instructed Defendant Bank of Vernon to transfer $675.00 from the Emergystat, Inc, Bank of Vernon corporate account to Defendant Bell's personal account at HSBC Card Services.  Plaintiff has suffered a loss in the amount of $675.00 as a result of the Defendant Bank of Vernon charging the Plaintiff's account for this amount.

v.      On or about June 2, 2008, Defendant Bell instructed Defendant BOV to transfer $1,968.68 from Southland's BOV corporate account to Defendant Bell's personal account at Americredit.  Southland has suffered a loss in the amount of $1,968.68 as a result of the Defendant  BOV charging its bank account for this amount.

w.      On or about June 6 2008, Defendant Bell instructed Defendant BOV to transfer $1,968.68 from Southland's BOV corporate account to Defendant Bell's personal account at Americredit.  Southland has suffered a loss in the amount of $1,968.68 as a result of the Defendant  BOV charging its bank account for this amount.

x.      On or about June 12, 2008, Defendant Bell instructed Defendant BOV to transfer $1,948.68 from Southland's BOV corporate account to Defendant Bell's personal account at Americredit.  Southland has suffered a loss in the amount of $1,948.68 as a result of the Defendant  BOV charging its bank account for this amount.

y.      On or about June 18, 2008, Defendant Bell instructed Defendant BOV to transfer $1,948.68 from Southland's BOV corporate account to Defendant Bell's personal account at Americredit.  Southland has suffered a loss in the amount of $1,948.68 as a result of the Defendant  BOV charging its bank account for this amount.

z.      On or about July 3, 2008, Defendant Bell instructed Defendant BOV Vernon to transfer $1,973.68 from Southland's BOV corporate account to Defendant Bell's personal account at Americredit.  Southland has suffered a loss in the amount of $1,973.68 as a result of the Defendant  BOV charging its bank account for this amount.

66.     With respect to each and every transfer of Emergystat, TWC, and Southland corporate funds identified in paragraph 65.a. through 65.z., Defendant Dudley Bell was without the authority, either actual or apparent, to make such transfer to his personal account.  Further, Defendant BOV had actual knowledge of Defendant Bell's lack of authority.

67.     With respect to each and every transfer of Emergystat, TWC, and Southland corporate funds identified in paragraph 65.a. through 65.z., Defendant BOV failed to follow its internal security procedures, if any, that were in place for confirming with the account owner such a transfer was properly authorized under section 7-4A-202 of the *Code of Alabama* 1975, as amended.  Furthermore, federal banking laws and were violated with respect to such security procedure failures and failure to confirm proper authorization.

68.     As a direct result of Defendant BOV's actions, Plaintiff has suffered the losses specified in paragraph 65.a. through 65.z.

    **WHEREFORE, PREMISES CONSIDERED**, Plaintiffs respectfully request that this Court, under the authority of section 7-4A-204 of the *Code of Alabama* 1975, as amended, grant Plaintiffs refund of the unauthorized funds transfers in the amount of total of unauthorized wires against Defendant Bank of Vernon, as well as interest, attorney's fees and any and all other relief as may be appropriate.

## COUNT IV
## VIOLATION OF CODE OF ALABAMA 7-4A-201 et seq.

69.     Plaintiffs reallege and incorporate by reference all preceding paragraphs and counts as though fully set forth herein.

70.     Defendant Clanton Dubose instructed the Defendant CSB to transfer monies from the corporate bank accounts of Southland and its subsidiaries for the payment of personal debts causing said companies to incur losses as detailed by the following:

    a.     On or about February 9, 2007, Defendant Dubose instructed Defendant CSB to transfer $8,712.74 from Southland's CSB corporate account to Defendant Dubose's personal account.  Southland has suffered a loss in the amount of $8,712.74 as a result of the Defendant CSB charging its bank account for this amount.

    b.     On or about March 9, 2007, Defendant Dubose instructed Defendant CSB to transfer $8,712.74 from Southland's CSB corporate account to Defendant Dubose's personal account.  Southland has suffered a loss in the amount of $8,712.74 as a result of the Defendant CSB charging its bank account for this amount.

    c.     On or about March 13, 2007, Defendant Dubose instructed Defendant CSB to transfer $51,000.00 from Southland's CSB corporate account to Defendant Dubose's personal account.  Southland has suffered a loss in the amount of $51,000.00 as a result of the Defendant CSB charging its bank account for this amount.

    d.     On or about April 9, 2007, Defendant Dubose instructed Defendant CSB to transfer $8,712.74 from Southland's CSB corporate account to Defendant Dubose's personal account.  Southland has suffered a loss in the amount of $8,712.74 as a result of the Defendant CSB charging its bank account for this amount.

    e.     On or about May 10, 2007, Defendant Dubose instructed Defendant CSB to transfer $8,712.74 from Southland's CSB corporate account to Defendant Dubose's personal account.  Southland has suffered a loss in the amount of $8,712.74 as a result of the Defendant CSB charging its bank account for this amount.

    f.     On or about June 9, 2007, Defendant Dubose instructed Defendant CSB to transfer $8,712.74 from Southland's, CSB corporate account to Defendant Dubose's

personal account.  Southland has suffered a loss in the amount of $8,712.74 as a result of the Defendant CSB charging its bank account for this amount.

       g.      On or about June 19, 2007, Defendant Dubose instructed Defendant CSB to transfer $14,000.00 from Southland's CSB corporate account to Defendant Dubose's personal account.  Southland has suffered a loss in the amount of $14,000.00 as a result of the Defendant CSB charging its bank account for this amount.

       h.      On or about July 13, 2007, Defendant Dubose instructed Defendant CSB to transfer $8,712.74 from Southland's CSB corporate account to Defendant Dubose's personal account.  Plaintiff has suffered a loss in the amount of $ 8,712.74 as a result of the Defendant CSB charging its bank account for this amount.

       i.      On or about July 26, 2007, Defendant Dubose instructed Defendant CSB to transfer $35,000.00 from Southland's CSB corporate account to Defendant Dubose's personal account.  Southland has suffered a loss in the amount of $ 35,000.00 as a result of the Defendant CSB charging its bank account for this amount.

       j.      On or about August 9, 2007, Defendant Dubose instructed Defendant CSB to transfer $ 8,712.74 from Southland's CSB corporate account to Defendant Dubose's personal account.  Southland has suffered a loss in the amount of $ 8,712.74 as a result of the Defendant CSB charging its bank account for this amount.

       k.      On or about September 11, 2007, Defendant Dubose instructed Defendant CSB to transfer $ 8,712.74 from Southland's CSB corporate account to Defendant Dubose's personal account.  Southland has suffered a loss in the amount of $ 8,712.74 as a result of the Defendant CSB charging its bank account for this amount.

       l.      On or about October 4, 2007, Defendant Dubose instructed Defendant CSB to transfer $ 16,000.00 from Southland's CSB corporate account to Defendant Dubose's personal account.  Southland has suffered a loss in the amount of $16,000.00 as a result of the Defendant CSB charging its bank account for this amount.

       m.      On or about October 4, 2007, Defendant Dubose instructed Defendant CSB to transfer $ 39,000.00 from Southland's CSB corporate account to Defendant Dubose's personal account.  Plaintiff has suffered a loss in the amount of $39,000.00 as a result of the Defendant CSB charging its bank account for this amount.

       n.      On or about October 6, 2007, Defendant Dubose instructed Defendant CSB to transfer $ 7,000.00 from Southland's CSB corporate account to Defendant Dubose's personal account.  Southland has suffered a loss in the amount of $7,000.00 as a result of the Defendant CSB charging its bank account for this amount.

       o.      On or about October 11, 2007, Defendant Dubose instructed Defendant CSB to transfer $ 8,712.74 from Southland's CSB corporate account to Defendant

Dubose's personal account.  Southland has suffered a loss in the amount of $ 8,712.74 as a result of the Defendant CSB charging its bank account for this amount.

p.      On or about October 12, 2007, Defendant Dubose instructed Defendant CSB to transfer $ 6,025.00 from Southland's CSB corporate account to Defendant Dubose's personal account.  Plaintiff has suffered a loss in the amount of $6,025.00 as a result of the Defendant CSB charging its bank account for this amount.

q.      On or about October 25, 2007, Defendant Dubose instructed Defendant CSB to transfer $ 25,100.00 from Southland's CSB corporate account to Defendant Dubose's personal account.  Southland has suffered a loss in the amount of $25,100.00 as a result of the Defendant CSB charging its bank account for this amount.

r.      On or about November 27, 2007, Defendant Dubose instructed Defendant CSB to transfer $ 8,712.74 from Southland's CSB corporate account to Defendant Dubose's personal account.  Southland has suffered a loss in the amount of $8,712.74 as a result of the Defendant CSB charging its bank account for this amount.

s.      On or about December 21, 2007, Defendant Dubose instructed Defendant CSB to transfer $ 8,712.74 from Southland's CSB corporate account to Defendant Dubose's personal account.  Southland has suffered a loss in the amount of $8,712.74 as a result of the Defendant CSB charging its bank account for this amount.

t.      On or about January 12, 2008, Defendant Dubose instructed Defendant CSB to transfer $8,712.74 from Southland's CSB corporate account to Defendant Dubose's personal account.  Southland has suffered a loss in the amount of $8,712.74 as a result of the Defendant CSB charging its bank account for this amount.

u.      On or about January 12, 2008, Defendant Dubose instructed Defendant CSB to transfer $7,000.00 from Southland's CSB corporate account to Defendant Dubose's personal account.  Southland has suffered a loss in the amount of $7,000.00 as a result of the Defendant CSB charging its bank account for this amount.

v.      On or about January 29, 2008, Defendant Dubose instructed Defendant CSB to transfer $10,391.65 from Southland's CSB corporate account to Defendant Dubose's personal account.  Southland has suffered a loss in the amount of $10,391.65 as a result of the Defendant CSB charging its bank account for this amount.

w.      On or about January 31, 2008, Defendant Dubose instructed Defendant CSB to transfer $12,000.00 from Southland's CSB corporate account to Defendant Dubose's personal account.  Southland has suffered a loss in the amount of $12,000.00 as a result of the Defendant CSB charging its bank account for this amount.

x.      On or about February 5, 2008, Defendant Dubose instructed Defendant CSB to transfer $22,000.00 from Southland's CSB corporate account to Defendant

Dubose's personal account.  Southland has suffered a loss in the amount of $22,000.00 as a result of the Defendant CSB charging its bank account for this amount.

        y.      On or about February 7, 2008, Defendant Dubose instructed Defendant CSB to transfer $21,700.17 from Southland's CSB corporate account to Defendant Dubose's personal account.  Southland has suffered a loss in the amount of $21,700.17 as a result of the Defendant CSB charging its bank account for this amount.

        z.      On or about February 12, 2008, Defendant Dubose instructed Defendant CSB to transfer $6,729.74 from Southland's CSB corporate account to Defendant Dubose's personal account.  Southland has suffered a loss in the amount of $6,729.74 as a result of the Defendant CSB charging its bank account for this amount.

        aa.      On or about February 26, 2008, Defendant Dubose instructed Defendant CSB to transfer $1,078.12 from Southland's CSB corporate account to Defendant Dubose's personal account.  Southland has suffered a loss in the amount of $1,078.12 as a result of the Defendant CSB charging its bank account for this amount.

70.      With respect to each and every transfer of Southland corporate funds identified in paragraph 70.a. through 70.aa., Defendant Clanton Dubose was without the authority, either actual or apparent, to make such transfer to his personal account.  Further, Defendant CSB had actual knowledge of Defendant Dubose's lack of authority.

71.      With respect to each and every transfer of Southland corporate funds identified in paragraph 70.a. through 70.aa., Defendant CSB failed to follow its internal security procedures, if any, that were in place for confirming with the account owner such a transfer was properly authorized under section 7-4A-202 of the *Code of Alabama* 1975, as amended.  Furthermore, federal banking laws and were violated with respect to such security procedure failures and failure to confirm proper authorization.

        **WHEREFORE, PREMISES CONSIDERED**, Plaintiffs respectfully request that this Court, under the authority of section 7-4A-204 of the *Code of Alabama* 1975, as amended, grant Plaintiffs refund of the unauthorized funds transfers in the amount of  the total of said wires against Defendant Citizens State Bank, as well as interest, attorney's fees and any and all other relief as may be appropriate.

## COUNT V
## CONVERSION/UNJUST ENRICHMENT

72.      Plaintiffs reallege and incorporate by reference all preceding paragraphs and counts as though fully set forth herein.

73.      Plaintiffs had an exclusive possessory right to instruments made payable to Plaintiffs and their associated subsidiary companies. These instruments are more

completely described, and incorporated by reference, in Counts II, III and IV of this Complaint.

74.     The Individual Defendants wrongfully removed the instruments from the premises of Plaintiffs, and then either deposited these instruments into their personal account, or cashed these instruments.

75.     The Defendant Banks engaged in a successive act of conversion by allowing the Individual Defendants to tender or deposit instruments bearing improper indorsements, missing indorsements, and funds improperly removed from the Plaintiffs' control.

76.     To date, the Defendants have refused to return the converted instruments, or their cash equivalent, to the Plaintiffs.

77.     Plaintiffs have been damaged in excess of the face value of the converted instruments as a direct and proximate result of Defendants' actions.

        **WHEREFORE, PREMISES CONSIDERED**, Plaintiffs request that this Court award Plaintiffs judgment against the Defendants, in the amount of not less than $3,000,000.00, together with legal interest on that amount from January, 2005, award plaintiff costs of suit, and grant such other and further relief as it deems just and proper.

## COUNT VI
## MONEY HAD AND RECEIVED
## AGAINST CORPORATE DEFENDANTS

78.     Plaintiffs reallege and incorporate by reference all preceding paragraphs and counts as though fully set forth herein.

79.     Individual Defendants Bell, Bell and Dubose unauthorizedly indorsed checks made payable to Southland or its' subsidiaries, and either cashed or deposited these funds in their individual accounts at the Defendant payee bank. Additionally, Individual Defendants Dudley Bell and Clanton Dubose stole blank corporate checks from the Plaintiff's corporate offices, and forged signatures on these instruments. The individual Defendants then presented these stolen and forged checks to the Defendant banks, who, in turn either cashed these forged instruments, or deposited them into the Individual Defendant's various personal accounts.

80.     Defendant Banks had a duty to inquire as to the genuineness of the indorsement on all of these instruments.

81.     The failure on the part of Defendants to make such inquiry was a breach of duty that it owed Plaintiffs, and made it liable to the Plaintiffs for the amount of the checks for money received by the Defendants.

82.     Plaintiffs, as a direct and proximate result of Defendants' negligent, wanton

and/or willful failure to verify the genuineness of the indorsements, have been caused to suffer a loss in an amount of not less than $3,000,000.00. Plaintiffs have been and continue to be damaged by Defendants' acts.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs request that this Court award Plaintiffs judgment against Defendants Bank of Vernon, Citizens State Bank, and West Alabama Bank and Trust, in the amount of $3,000,000.00, together with legal interest on that amount from January 1, 2005, award plaintiff costs of suit; and grant such other and further relief as it deems just and proper.

## COUNT VII
## MONEY HAD AND RECEIVED
## AGAINST INDIVIDUAL DEFENDANTS

83.     Plaintiffs reallege and incorporate by reference all preceding paragraphs and counts as though fully set forth herein.

84.     Individual Defendants Bell, Bell and Dubose unauthorizedly indorsed checks made payable to Southland or its' subsidiaries, and either cashed or deposited these funds in their individual accounts at the Defendant payee bank. Additionally, Individual Defendants Dudley Bell and Clanton Dubose stole blank corporate checks from the Plaintiff's corporate offices, and forged signatures on these instruments. The individual Defendants then presented these stolen and forged checks to the Defendant banks, who in turn either cashed these forged instruments, or deposited them into the Individual Defendant's various personal accounts.

85.     The Individual Defendants have enjoyed and continue to enjoy the benefit of the misappropriated corporate funds. The Individual Defendants had no legal right to or justification for taking the funds.

86.     These acts of the Individual Defendants constitute a breach of duty that Defendants owed Plaintiffs, and Defendants are liable to the Plaintiffs for the amount of the checks for money received by the Defendants.

87.     Plaintiffs, as a direct and proximate result of Defendants' negligent, wanton and/or willful conduct, have been caused to suffer a loss in an amount of not less than $3,000,000.00, together with legal interest on that amount from January 1, 2005. Plaintiffs continue to be damaged by Defendants' acts.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs request that this Court award Plaintiffs judgment against the Individual Defendants in the amount of $ $3,000,000.00, together with legal interest on that amount from January 1, 2005; award plaintiff costs of suit; and grant such other and further relief as it deems just and proper.

## COUNT VIII
## NEGLIGENT HIRING AND SUPERVISION BY DEFENDANTS WEST ALABAMA BANK AND TRUST, BANK OF VERNON AND CITIZENS STATE BANK

88.     Plaintiffs reallege and incorporate by reference all preceding paragraphs and counts as though fully set forth herein.

89.     Defendant WABT had an affirmative duty to Plaintiffs to properly train and supervise their employees, specifically their tellers, with respect to reporting guideline under the Bank Secrecy Act, and to prevent the misuse of accounts under the control of Defendant WABT for the purpose of fraud, embezzlement, and the violation of all applicable federal laws.

90.     Defendant WABT knew or should have known its employees, specifically tellers identified as Teller # 61 and Teller # 64, among others, behaved in a dangerous or otherwise incompetent manner by allowing the Individual Defendants to deposit or cash stolen instruments. Tellers A, B, and C were on the premises of Defendant WABT for the purpose of performing work for the Defendant, and used the instrumentalities of Defendant WABT in furtherance of the breach of duty to Plaintiffs.

91.     Defendant WABT, having this knowledge, failed to supervise the employee adequately, or failed take other action to prevent the harm. The employees were within the line and scope of their employment with Defendant WABT at the time they conspired with the Individual Defendants, or facilitated the Individual Defendants activities of fraud.

92.     The injuries suffered by the Plaintiffs were a reasonably foreseeable consequence of employer's negligent failure to train and supervise, and Plaintiffs were injured as a direct and proximate result of Defendant WABT's failure to train and supervise their employees.

93.     Defendant WABT is liable for its negligence in failing properly to instruct its employees, or failing to assure that the corporate policies of the bank were followed, and Defendant  WABT knew or should have known that its employees were not following the bank's policies.

94.     Defendant BOV had an affirmative duty to Plaintiffs to properly train and supervise their employees, specifically their tellers, with respect to reporting guideline under the Bank Secrecy Act, and to prevent the misuse of accounts under the control of Defendant BOV for the purpose of fraud, embezzlement, and the violation of all applicable federal laws.

95.     Defendant BOV knew or should have known its employees, specifically tellers identified as Teller # 2, Teller # 3, Teller # 8, Teller # 22, and Teller # 21, among others, behaved in a dangerous or otherwise incompetent manner by allowing the Individual

Defendants to deposit or cash stolen instruments. Tellers A, B, and C were on the premises of Defendant BOV for the purpose of performing work for the Defendant, and used the instrumentalities of Defendant BOV in furtherance of the breach of duty to Plaintiffs.

96.     Defendant BOV, having this knowledge, failed to supervise the employee adequately, or failed take other action to prevent the harm. The employees were within the line and scope of their employment with Defendant BOV at the time they conspired with the Individual Defendants, or facilitated the Individual Defendants activities of fraud.

97.     The injuries suffered by the Plaintiffs were a reasonably foreseeable consequence of employer's negligent failure to train and supervise, and Plaintiffs were injured as a direct and proximate result of Defendant BOV's failure to train and supervise their employees.

98.     Defendant BOV is liable for its negligence in failing properly to instruct its employees, or failing to assure that the corporate policies of the bank were followed, and Defendant BOV knew or should have known that its employees were not following the bank's policies.

99.     Defendant CSB had an affirmative duty to Plaintiffs to properly train and supervise their employees, specifically their tellers, with respect to reporting guideline under the Bank Secrecy Act, and to prevent the misuse of accounts under the control of Defendant CSB for the purpose of fraud, embezzlement, and the violation of all applicable federal laws.

100.    Defendant CSB knew or should have known its employees, specifically tellers identified as Teller # 1, Teller # 2, Teller # 3, Teller # 5, Teller # 6 and Teller #7, among others, behaved in a dangerous or otherwise incompetent manner by allowing the Individual Defendants to deposit or cash stolen instruments. Tellers 2, 3, 5, 6 and 7 were on the premises of Defendant CSB for the purpose of performing work for the Defendant, and used the instrumentalities of Defendant CSB in furtherance of the breach of duty to Plaintiffs.

101.    Defendant CSB, having this knowledge, failed to supervise the employee adequately, or failed take other action to prevent the harm. The employees were within the line and scope of their employment with Defendant CSB at the time they conspired with the Individual Defendants, or facilitated the Individual Defendants activities of fraud.

102.    The injuries suffered by the Plaintiffs were a reasonably foreseeable consequence of employer's negligent failure to train and supervise, and Plaintiffs were injured as a direct and proximate result of Defendant CSB's failure to train and supervise their employees.

103.    Defendant CSB is liable for its negligence in failing properly to instruct its employees, or failing to assure that the corporate policies of the bank were followed, and Defendant CSB knew or should have known that its employees were not following the bank's policies.

104.    Plaintiffs have suffered and continue to suffer damage as a result of Defendants' conduct.

        **WHEREFORE, PREMISES CONSIDERED**, Plaintiffs request that this Court award Plaintiffs judgment against the Defendants, in the amount of $ $3,000,000.00, together with legal interest on that amount from January 1, 2005, together with legal interest on that amount from January 1, 2005, award Plaintiffs costs of suit, and grant such other and further relief as it deems just and proper.

## COUNT IX
## CIVIL CONSPIRACY

105.    Plaintiffs reallege and incorporate by reference all preceding paragraphs and counts as though fully set forth herein.

106.    On or about January 1, 2005, and continuing until July 4, 2008, the Individual Defendants maliciously conspired together in various cities and counties located in the Western District of Alabama to defraud Plaintiffs.

107.    The conspiracy consisted of Defendants Bell, Dubose, Walls and other individuals unknown at this time. The common scheme of the conspiracy was: (1) to artificially and illegally depreciate the value of Paladin and Southland corporate assets, and (2) to utilize various bank accounts and banking relationships between the Individual Defendants and the Defendant Banks in order to systematically defraud the Plaintiffs of the value of their interests in the companies.

108.    In violation of various state and federal laws, and in furtherance of the conspiracy, the Individual Defendants committed the individual wrongful acts enumerated in Counts II and III in order to embezzle and otherwise convert and wrongfully appropriate Plaintiffs' corporate funds. These overt acts of the conspiracy were the proximate cause of Plaintiffs' injuries.

109.    The Individual Defendants had actual knowledge of, and the intent to bring about, the object of the claimed conspiracy.

110.    In committing these acts, the Defendants acted with malice, and the specific intent to defraud and damage the Plaintiffs.

111.    As a direct and proximate result of these wrongful acts, Plaintiffs have been caused to suffer damages in excess of Three Million Dollars ($3,000,000.00).

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs request that this Court award Plaintiffs judgment against the Defendants, in the amount of $3,000,000.00, together with legal interest on that amount from January 1, 2005, award Plaintiffs costs of suit, and grant such other and further relief as it deems just and proper.

## COUNT X
## CIVIL RICO: VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT 18 U.S.C.A. §§ 1961 et seq. (18 U.S.C. §1964(c)-(d))

112.    Plaintiffs reallege and incorporate by reference all preceding paragraphs and counts as though fully set forth herein.

113.    Plaintiffs Southland and Paladin were engaged in interstate and foreign commerce, and conducted business across interstate lines in seven different states.

114.    In violation of 18 U.S.C. 1964(c) and (d), the Individual Defendants were employed by or associated with an enterprise, specifically their attempt to defraud Plaintiffs of funds for work performed in the course of Plaintiffs' business, and to impair the credit and ability of Plaintiffs to conduct Plaintiffs' business. The racketeering enterprise, within the meaning of 18 U.S.C. § 1961, was an association in fact of Dudley Bell, Clanton Dubose, and other individuals, based on each defendant's particular function within the enterprise, to embezzle and otherwise steal corporate funds. These various associates functioned as a unit. The enterprise was an entity separate and apart from the pattern of activity in which it engaged. The common purpose of the enterprise was (1) to artificially and illegally depreciate the value of Paladin and Southland corporate assets, and (2) to utilize various bank accounts and banking relationships between the Individual Defendants and the Defendant Banks in order to systematically defraud the Plaintiffs of the value of their interests in the companies. .

115.    All of the predicate acts of racketeering activity were part of the nexus of the affairs and functions of the racketeering enterprise.

116.    The Individual Defendants were enabled to commit the predicate offenses by virtue of their position in the enterprise, or involvement in or control over the affairs of the enterprise.

117.    All of the predicate acts of racketeering activity occurred after the effective date of 18 U.S.C. §1961 *et seq*.

118.    The predicate acts of racketeering activity began on or about January 1, 2005.

119.    The pattern of racketeering activity is currently ongoing and open ended, and threatens to continue indefinitely unless this Court enjoins the racketeering activity.

120.    Numerous schemes have been completed involving repeated criminal conduct that by its nature projects into the future with a threat of repetition.

121.    The predicate acts have the same or similar purposes, results, participants, victims, and methods of commission.

122.    The Individual Defendants conspired and agreed to engage in the enterprise through a pattern of predicate acts. All of these acts were violations as defined by statute.

123.    This enterprise was in direct violation of 18 U.S.C. §1956 (a)(1)(A)(i) and (B)(i), in that the Defendants, knowing that the funds involved in the financial transactions enumerated in Counts II and III, were proceeds of illegal activity, and that the further transactions after the theft of the funds were performed with the intent to promote the carrying on of specified unlawful activity, or were performed with the knowledge that the transaction was designed, in whole or in part, to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of the unlawful activity. The Defendants also repeatedly violated 18 U.S.C. §1341 in furtherance of the enterprise.

124.    Further, the Individual Defendants, by words and actions, objectively manifested an agreement to participate, directly or indirectly, in the affairs of the enterprise through the commission of the predicate crimes and transactions listed in Counts II and III, among others.

125.    This enterprise directly affected interstate commerce, as the Plaintiffs were clearly engaged in interstate commerce in the line and scope of their business, and the purpose of the Defendants enterprise was to systematically impact the Plaintiffs' ability to continue to conduct said business. As a result, the unlawful and fraudulent enterprise of the Defendants to steal fees and monies of the Plaintiffs directly impacted interstate commerce, as did the Plaintiffs' closure of business locations in several states.

126.    The Individual Defendants operated or managed the enterprise through a pattern of racketeering activity, which included at least one hundred individual and distinct violations, within the past three (3) years, of theft and/or conversion of Plaintiffs' corporate funds via the use of the mails and/or wire transfers, as well as a pattern of transferring large amounts of purloined corporate funds though a complex series of bank transfers in and between Defendant Banks in Alabama and Mississippi.

127.    The Plaintiffs have been and continue to be severely and irreparably injured in their business and property as a direct and proximate result of the pattern of racketeering activity.

128.    In violation of 18 U.S.C. 1962(d), the Individual Defendants also conspired to violate 18 U.S.C. §1961 *et seq.*  The Defendants conspired and agreed to commit the underlying predicate acts of forgery, mail fraud, check fraud and money laundering (the substantive 18 U.S.C. §1962(c) violations). The Defendants conspired and agreed to

commit these acts in furtherance of their conspiracy and enterprise. Specifically, the Defendants entered into an agreement to conduct or participate in the affairs of an enterprise through a pattern of racketeering activity as proscribed by subsection 1962(c), with the specific intent to defraud the Plaintiffs. In furtherance of this enterprise, the Defendants agreed to assist the enterprise's involvement in corrupt endeavors with the intent to violate the provisions of 18 U.S.C. §1961 *et seq.*

129.    The Plaintiffs have been injured by reason of the Defendants' violations and conspiracy to violate 18 U.S.C. §1961 *et seq.*

        **WHEREFORE, PREMISES CONSIDERED**, Plaintiffs request that this Court award Plaintiffs judgment against the Defendants, in the amount of $3,000,000.00, together with legal interest on that amount from January 1, 2005, award plaintiff costs of suit; award treble damages as allowed under 18 U.S.C. §1962(c), and grant such other and further relief as it deems just and proper.

## COUNT XI
## VIOLATION OF ALABAMA CODE §8-27-1 *et seq.*

130.    Plaintiffs reallege and incorporate by reference all preceding paragraphs and counts as though fully set forth herein.

131.    Defendant Gary Bradford was the assistant Chief Operating Officer for the relevant period of time, and was and is subject to a valid non-compete agreement executed in 2004.

132.    Defendant Bradford and the other Individual Defendants have been privy to the proprietary information and trade secrets of the Plaintiffs, particularly with respect to the operations of an interstate ambulance company.

133.    The Defendants discovered the proprietary information and trade secrets by improper means, and under the color of being loyal and faithful employees of the Plaintiffs.

134.    The Defendants' disclosure or use of Plaintiffs' proprietary information constitutes a breach of confidence reposed in Defendants by Plaintiff.

135.     The other Individual Defendants learned the protected information from Gary Bradford, and knew or should have known that the information was a trade secret or proprietary in nature, and that the trade secret had been appropriated under circumstances which violate the provisions of Defendant Bradford's contract and nondisclosure agreement.

136.    The Individual Defendants learned the information and knew or should have known that it was a trade secret and that its disclosure was made to that person by mistake, or that Defendant Bradford was under a duty not to disclose these secrets.

137.    Defendant Bradford's disclosure and the Individual Defendants' continued use of Plaintiffs' proprietary information constitutes a violation, and liable for their disclosure and/or use of this information. Defendant Bradford is liable for the disclosure of the trade secrets. The additional Individual Defendants have violated and continue to violate Ala. Code §8-27-1, *et seq.*, because they have used those trade secrets in that they have established or associated a competing company.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs request that this Court award Plaintiffs judgment against the Defendants, in the amount of $1,000,000.00, award plaintiff costs of suit and attorney's fees; award compensatory and punitive damages, and grant such other and further relief as it deems just and proper.

## COUNT XII
## MISAPPROPRIATION, CONVERSION OR DIVERSION
## OF CORPORATE ASSETS AND FUNDS

138.    Plaintiffs reallege and incorporate by reference all preceding paragraphs and counts as though fully set forth herein.

139.    Plaintiff Lunan is a creditor of the corporation, and has pledged as security various personal and real property for the benefit of the Plaintiffs.

140.    The Defendants had a duty to Lunan, as a creditor and as a shareholder, not to waste or divert corporate assets for improper or unnecessary purposes.

141.    No consideration was received by the Plaintiff corporations, Lunan or the shareholders for the corporate assets misappropriated by the Defendants.

142.    The Individual Defendants personally received the misappropriated assets in their individual capacities, and are liable for actual misfeasance in appropriating corporate funds to their personal use. Defendants have become constructive trustees for the benefit of the Plaintiffs, and are personally liable for the improper expenditures of corporate funds.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs request that this Court award Plaintiffs judgment against the Defendants, in the amount of $38,700,000.00, together with legal interest on that amount from January 1, 2005, award Plaintiffs costs of suit, deem Defendants constructive trustees of all corporate assets wrongful diverted for their own benefit, and grant such other and further relief as it deems just and proper.

## COUNT XIII
## CONSTRUCTIVE TRUST

143.    Plaintiffs reallege and incorporate by reference all preceding paragraphs and counts as though fully set forth herein.

144.     Defendants' wrongful, fraudulent, improper and unlawful transfers of revenue, loan proceeds, monies, and other property to themselves or entities owned or controlled by them, some of which are named above as Defendants, have adversely affected Plaintiffs' ownership interests and rights, and had deprived Plaintiffs of an adequate remedy at law.

145.     To provide Plaintiffs with a full and adequate remedy, and to prevent Defendants from enjoying the fruits of their wrongful, fraudulent, and unlawful conduct, a constructive trust inuring to the benefit of Plaintiffs should be placed over all trusts, corporations, partnerships, associations, persons, or entities to whom revenue, loan proceeds, monies and other property of the named Defendants, and the entities affiliated directly or indirectly with them, to which said assets have been wrongfully, fraudulently, improperly or unlawfully transferred, including, but not limited to, entities owned or controlled by Defendants.

         **WHEREFORE, PREMISES CONSIDERED**, Plaintiffs request that this Court deem Defendants constructive trustees of all corporate assets wrongful diverted for their own benefit, order such property and cash returned to the Plaintiffs, and grant such other and further relief as it deems just and proper.

## COUNT XIV
## ACCOUNTING

146.     Plaintiffs reallege and incorporate by reference all preceding paragraphs and counts as though fully set forth herein.

147.     Defendants have direct and indirect ownership interests in numerous other interests and companies in Alabama and in states other than Alabama, some or all of which interests and business have been subsidized via the Defendants' misappropriation of Plaintiffs' funds.

148.     The Individual Defendants' handling of the finances of the Plaintiff companies makes it likely that Defendants' other companies and interests have been subsidized by the LLC in which Plaintiff has ownership interest.

149.     Defendants have failed to comply with their duties under all applicable law.

150.     Due to the ongoing, repeated and complex nature of the Defendants' fraud, Plaintiffs are unable to state with certainty the full extent and amount of the fraud.

         **WHEREFORE, PREMISES CONSIDERED**, Plaintiffs request that the Court enter an order requiring Defendants to provide an accounting by an independent auditor or accounting firm as to the full extent of the fraud, and to provide such other equitable and legal relief as is appropriate.

As a direct and proximate result of the foregoing misconduct and breaches of duty alleged herein, the Defendants are liable to the Plaintiffs, jointly and severally, in an amount not less than $47,000,000.00.

**WHEREFORE,** Plaintiffs pray that this Court shall:

(a)     appoint a receiver to control the assets of the Individual Defendants and govern their affairs pending a final trial on the merits;

(b)     grant Plaintiffs compensatory damage for all economic damages suffered, including but not limited to a return of all corporate assets and instruments wrongly tendered, accepted and/or converted by Defendants, together with allowable statutory interest;

c)     impose a constructive trust or equitable lien on all assets of the Individual Defendants, including bank accounts, real and personal property, as well as insurance policies inuring to the benefit of the Individual Defendants or their donee beneficiaries, in order to prevent unjust enrichment and to force a restitution to the Plaintiffs;

(d)     Award the Plaintiff compensatory and punitive damages for the oppressive conduct of the Defendants as allowed, as well as treble damages as allowed by statute; and

(e)     Enter such further and additional relief to which Plaintiff is entitled.

Filed this the 23rd day of December, 2008.

/s/ J. Randall Pitts (ASB-4455-E66P)
Attorney for Plaintiff

**OF COUNSEL:**
BRADFORD-PITTS L.L.C.
58 Vine Street, Suite 100
Birmingham, Alabama 35213
(205) 871-2700

**PLAINTIFFS DEMAND A JURY ON ALL ISSUES SO TRIABLE**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served by either electronic means via ECF, or by U.S. Mail Certified Postage Prepaid and Properly addressed to all parties or their attorney of record on this the 23rd day of December, 2008.

Bank of Vernon,
44825 Highway 17
Vernon, Alabama, 35592

Citizens State Bank
209 West Columbus Avenue
Vernon, Alabama 35592

West Alabama Bank and Trust
509 1st Street South, Reform
Alabama, 35481

Clanton Dubose
11588 Highway 18
Vernon, Alabama 35592

William Dudley Bell, Jr.
200 Oak Creek Dr.
Fayette, Alabama 35555

Suzan R. Bell
200 Oak Creek Dr.
Fayette, Alabama 35555

T. Alan Walls
2161 Perrin Dr.
Lawrenceville, GA 30043

Gary Bradford
18456 County Road 49
Vernon, Alabama 35592

/s/ J. Randall Pitts, Jr.